IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| John Baker, | ) | Case No. 5:06cv1547 |
| | ) | |
| Plaintiff, | ) | Judge Patricia A. Gaughan |
| | ) | |
| v. | ) | **Report and Recommendation of** |
| | ) | **Magistrate Judge** |
| Julius Wilson, Warden, | ) | |
| | ) | Magistrate Judge James S. Gallas |
| Defendant. | ) | |

*Introduction*

　　Petitioner John Baker ("Baker") has filed a petition pro se for a writ of habeas corpus

regarding his 2002 guilty plea on charges of aggravated vehicular homicide, aggravated

vehicular assault and driving under the influence of alcohol or drugs in the Summit County

Court of Common Pleas.  Baker raises one ground for relief:

　　Petitioner was denied due process and equal protection of the law when neither
　　trial court or counsel advised him of his right to appeal in violation of Article I
　　§16 of the Ohio Constitution and the Fourteenth Amendment to the United States
　　Constitution.

　　In response, respondent contends that federal review is barred under the "1-year period

of limitation" contained in 28 U.S.C. §2244(d)(1)(A).[1]  Baker asserts that the statute of

_____

[1] 28 U.S.C. §2244(d) reads as follows:
　　(d)(1) A 1-year period of limitation shall apply to an application for writ of habeas corpus
　　by a person in custody pursuant to the judgment of a State court.  The limitation period
　　shall run from the latest of -

　　　　(A) the date on which the judgment became final by the conclusion of direct
　　　　review or the expiration of the time for seeking such review;

　　　　(B) the date on which the impediment to filing an application created by State
　　　　action in violation of the Constitution or laws of the United States is removed, if
　　　　the applicant was prevented from filing by such State action;

limitations should not begin to run until a later date calculated under the triggering provisions in §2244(d)(1)(B) or (D) because he was not informed of his right to appeal.   Respondent also contends that Baker's lone ground for relief is unexhausted because he could still seek leave to file a motion for leave to file delayed direct appeal under Ohio App.R. 5(A).  For reasons set forth in detail below, it is recommended that the instant petition for a writ of habeas corpus be dismissed as time-barred.

*Factual and Procedural Background*

**A. Trial Court History**

On June 13, 2002, Baker was indicted by the Grand Jury for Summit County, Ohio, for the following eight counts: a) two second-degree felony counts of aggravated vehicular homicide, in violation of R.C. 2903.06(A)(1), involving the deaths of Edward Fasy and Rebecca Rose (respectively, counts one and two); b) two third-degree felony counts of involuntary manslaughter in violation of R.C. 2903.04(B) (respectively, counts three and four); c) one third-degree felony count of aggravated vehicular assault in violation of R.C. 2903.08(A)(1) (count five); d) two first-degree misdemeanor counts of driving under the influence of alcohol or drugs in violation of R.C. 4511.19(A)(5) (respectively, counts six and seven); and, e) one minor

---

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(d)(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

misdemeanor count of lanes of travel/weaving in violation of R.C. 4511.25 (count eight). (Respondent's Ex. 1, Indictment, Summit County Common Pleas Court Case No. CR2002-06-1500; Exhibit 2, Docket, CCP CR2002-06-1500).

On November 13, 2002, Baker, through counsel, withdrew his plea of not guilty and entered a guilty plea to counts one, two, five, and six; the remaining counts were to be nolled. (Respondent's Ex. 2; also see, Exhibit 5, Motion to Withdraw Guilty Plea, CCP CR2002-06-1500, at Exh. H, Guilty Plea Hearing Transcript).

On December 20, 2002 (journalization date), Baker, by virtue of the consecutive term imposed for count five, was sentenced to an aggregate term of 10 years and, in addition, the maximum amount of post-release control was also imposed. (Respondent's Ex. 3, Sentencing Entry, CCP CR2002-06-1500; also see, Ex. 4, Sentencing Hearing Transcript, CCP CR2002-06-1500). There was no timely appeal from the convictions and sentencing.

### B. Motion to Withdraw Guilty Plea

On April 2, 2004, well over a year after he was sentenced, Baker, through new retained counsel, filed a motion to withdraw guilty plea pursuant to Ohio Crim.R. 32.1. (Respondent's Ex. 5, Motion to Withdraw Guilty Plea, CCP CR2002-06-1500). In this motion, Baker claimed that his guilty plea was invalid based on ineffective assistance of trial counsel because counsel had allegedly advised Baker that he would receive probation and not a jail term. (*Id.*) Baker also argued in this motion if he had known he would be imprisoned, he would not have pleaded guilty. that the trial court failed to comply with Ohio Crim.R. 11 when it accepted his guilty plea, and that the court failed to notify him that he was not eligible for probation pursuant to

Crim.R. 11(C)(2)(a). (*Id.*)

On July 21, 2004, the trial court denied the motion to withdraw guilty plea. (Respondent's Ex. 7, Journal Entry, CCP CR2002-06-1500).  Significantly, in its decision denying the motion, the trial court noted that "[d]efendant did not file an appeal."  (*Id.*)  Baker now claims that this journal entry was the first time he learned of his right to appeal and that he did not receive this document until September, 2005–over a year after it was journalized.

On August 31, 2004, Baker, through counsel, filed a belated notice of appeal in the Ninth District Court of Appeals from the denial of plea withdrawal and a "motion to reinstate appellate rights," which the Ninth District treated as a motion for leave to filed delayed appeal. (Respondent's Ex. 8, Notice of Appeal, COA 22293; Ex. 9, Docket, COA 22293; (Ex. 10, Motion to Reinstate, COA 22293).  The Ninth District granted leave. (Ex. 11, Journal Entry, COA 22293).  On November 22, 2004, Baker filed his appellant's brief, presenting the following two assignments of error:

> 1. The trial court abused its discretion by denying Mr. Baker's motion to withdraw his guilty plea where the evidence showed the plea was not voluntary, knowing, and intelligent and there is a reasonable probability that but for the ineffective assistance of counsel he would not have pled guilty.
>
> 2. The trial court abused its discretion when it denied Mr. Baker's motion to withdraw his guilty plea without conducting an evidentiary hearing.

(Ex. 12, Appellant's Brief, COA 22293, at p. 2).

On March 9, 2005, the Ninth District affirmed the judgment of the trial court. (Respondent's Ex. 14, Decision and Journal Entry, COA 22293; also see, Ex. 15, *State v. Baker*, Summit App. No. 22293, 2005-Ohio 991, 2005 Ohio App. LEXIS 1001).

On April 15, 2005, Baker, acting pro se, filed a notice of appeal and jurisdictional

-4-

memorandum in the Ohio Supreme Court from the decision in COA 22293. (Respondent's Ex.

16, Notice of Appeal, OSC 05-0660; Ex. 17, Jurisdiction Memorandum, OSC 05-0660; Ex. 18,

Docket, OSC 05-0660). Baker's three propositions of law stated the following:

> Proposition of Law No. 1: A criminal defendant has a constitutional right to effective assistance of counsel. When trial counsel erroneously advises his client that he will receive community control, [probation] in exchange for his guilty plea, without advising the client that the criminal offense mandates a prison sentence, counsel's deficiency is prejudicial to his client and constitutes a manifest injustice sufficient to allow the post-sentence withdrawal of the guilty plea.

> Proposition of Law No. 2: A trial court abuses its discretion when it denies a criminal defendant's motion to withdraw his guilty plea when the evidence demonstrates that the plea was not entered into knowingly, intelligently, and voluntarily, and there exists a reasonable probability that but for the ineffectiveness of counsel, the defendant would not have pleaded guilty.

> Proposition of Law No. 3: A trial court abuses its discretion when it denies a motion to withdraw guilty plea without conducting an evidentiary hearing when substantive grounds for relief exist that evidence that a criminal defendant has received ineffective assistance of counsel and that his guilty plea was not knowingly, intelligently, and voluntarily made.

(Exhibit 17 at p. I).

On July 13, 2005, the Ohio Supreme Court denied leave to appeal and dismissed the

appeal as not involving any substantial constitutional question. (Ex. 19, Entry, OSC 05-0660).

There was no further appeal from that decision.


### C. Delayed Direct Appeal of the Sentence

On December 8, 2005, Baker, acting pro se, filed a notice of appeal in the Ninth District

Court of Appeals from his 2002 conviction and sentencing. (Respondent's Ex. 20, Notice of

Appeal, COA 23008; Ex. 21, Docket, COA 23008). On December 13, 2005, Baker filed a pro se

motion for leave to file delayed direct appeal pursuant to Ohio App.R. 5(A). (Respondent's Ex.

-5-

22, Motion for Leave, COA 23008). In that motion for leave Baker asserted as cause for the delay that he had not been advised by the trial court, or trial counsel, of his right to appeal. (*Id.*) Baker further asserted that he did not become aware of his right to a direct appeal until the time "he received the trial court's Journal Entry denying his Crim.R. 32.1 motion." (*Id.* at p. 6).[2]

Further, Baker presented one proposed assignment of error should leave to file a delayed direct appeal be granted: ineffective assistance of trial counsel in not appealing the imposition of maximum terms of incarceration on some of the counts, and the imposition of greater than the minimum term of incarceration, based on the use of *Blakely*-deficient findings by the sentencing court. (*Id.* at pp. 9-14).

On December 13, 2005, the Ninth District Court of Appeals dismissed the notice of appeal as being untimely in violation of Ohio App.R. 4(A), and also found that Baker had not "met the requirements set forth in App.R. 5(A)." (Respondent's Ex. 23, Journal Entry, COA 23008). On December 20, 2005, the Ninth District denied as moot the motion for leave to file a delayed appeal, noting that the notice of appeal in COA 23008, which failed to contain a concurrently filed motion for delayed appeal as required by App.R. 5(A), had been dismissed on December 13, 2005. (Respondent's Ex. 24, Journal Entry, COA 23008).

In this habeas matter, Baker moved to expand the record to submit evidence to show that contrary to the Ninth District's decision denying his motion for leave to file a delayed appeal, he had complied with App.R 5(A). The undersigned granted Baker's motion. Accordingly, Baker filed an affidavit, cover letters and copies of institutional cash withdrawal slips which are dated

---

[2]In his motion for leave to file a delayed appeal Baker does not indicate when he received the journal entry denying his motion to withdraw his guilty plea. In his habeas petition, Baker claims he did not receive the July 21, 2004 journal entry until September, 2005.

November 28, 2005 and indicate that he mailed both the notice of appeal and motion for leave to

file delayed appeal for filing at the same time.  While Baker has attempted to persuade this court

that he complied with App.R. 5(A), Baker did not take any action to so persuade the state court

at the time his motion was denied.  For example, he did not move for reconsideration under Ohio

Appellate Rule 26(A), and did not raise the particular circumstances of the denial of his delayed

appeal on his appeal to the Ohio Supreme Court or otherwise contest the Ninth District Court of

Appeals' decision until he filed his Traverse in this matter.

On January 24, 2006, Baker filed a pro se timely notice of appeal and jurisdictional

memorandum in the Ohio Supreme Court from the Ninth District's order of December 13, 2005

dismissing his notice of appeal in COA 23008. (Respondent's Ex. 25, Notice of Appeal, OSC

06-0158; Ex. 26, Jurisdiction Memorandum, OSC 06-0158; Ex. 27, Docket, OSC 06-0158).

Baker presented three propositions of law:

> Proposition of Law No. 1: When a defendant is not informed by the trial court or
> counsel of his right to appeal he is denied due process and equal protection of the
> law, in violation of the Fourteenth Amendment to the United States Constitution.

> Proposition of Law No. 2: Appellant was denied the effective assistance of
> counsel as guaranteed by the Sixth and Fourteenth Amendments to the United
> States Constitution.

> Proposition of Law No. 3: When a sentencing court imposes a sentence on the
> basis of facts not considered by the jury, a defendant's Sixth Amendment right to
> trial by jury is violated.

(Exhibit 26 at p. 1).

On April 12, 2006, "upon consideration of the jurisdictional memoranda" the Ohio

Supreme Court denied leave to appeal. (Respondent's Ex. 28, Entry, OSC 06-0158).

-7-

*Timeliness*

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, because Baker filed his habeas petition after the effective date of the AEDPA. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). In the AEDPA, Congress enacted a period of limitations for the filing of habeas petitions. The Summit County Court of Common Pleas entered judgment following Baker's sentencing on December 20, 2002. (Respondent's Ex. 2). It is undisputed that Baker did not take any action that would serve to toll the running of the statute. In fact, he did not take any action with respect to his conviction or sentence until his retained counsel filed a motion to withdraw his guilty plea on April 2, 2004–well over a year after the period for Baker to seek direct review had expired. (*Id.*). While a duly filed motion or petition for collateral review of post-conviction relief can toll the statute of limitations under §2244(d)(2), it does not revive, or "restart the clock", for an already expired statute of limitations period. *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003). Baker concedes that his petition is untimely under §2244(d)(1)(A). (Memorandum in Support at p. 6).


*Impediment*

Baker contends that failure to inform him of his appellate rights and to appoint counsel for his appeal constituted a state-created impediment to filing for purposes of §2244(d)(1)(B) because Baker remained ignorant of his appellate rights, and therefore the statute of limitations on his habeas petition should be calculated from the time the impediment was removed, which Baker claims is when he learned of his right to appeal in September, 2005. Baker is correct that

-8-

respondent did not address this issue in his Return of Writ.  Nonetheless, Baker's argument is not well-taken.

Baker directs the court to *Waldron v. Jackson*, 348 F.Supp.2d 877, 880 (N.D.Ohio 2004) as authority for his claim that he is entitled to the later start to the running of the statute of limitations in §2244(d)(1)(B).  Waldron was convicted of two counts of rape and two counts of compelling prostitution.  During sentencing, the trial court advised Waldron of his appellate rights, and Waldron responded that he would pursue an appeal. *Id.*  Waldron's appointed counsel had 30 days in which to file a notice of appeal, and did not do so until four days after the deadline. *Id.*  According to Waldron, his counsel never notified him of the appellate court's dismissal of the appeal.  *Id.*  Three years later, Waldron filed a motion for leave to file a delayed appeal pursuant to Ohio App. R. 5(A). *Id.*  That motion and Waldron's subsequent motion for reconsideration were denied.  *Id.*  Waldron appealed both rulings to the Ohio Supreme Court and both were dismissed.  *Id.*  Waldron then filed a petition for a federal writ of habeas corpus.  *Id.* at 881.

As in the present case, Waldron argued the one year statute of limitations did not begin to run until after the final ruling on the delayed appeal due to a state-created impediment caused by trial counsel's ineffective assistance of counsel.  The district court agreed:

> Given that the State created the constitutional impediment to the perfection of Mr. Waldron's appeal, it should not benefit from the subsequent delay created by that violation.  Because the petitioner's state claims remain unexhausted until he or she files a motion for a delayed appeal, his ineffective assistance of counsel in filing a timely appeal continues to prevent his filing of a federal habeas petition until the resolution of his delayed appeal.  Once the petitioner's delayed appeal has been finally ruled on by the state courts and the ninety day period for filing certiorari with the United States Supreme Court has

-9-

expired, his or her habeas limitations' period begins to run.[3]

*Id.* at 886.

The case before the court is distinguishable from *Waldron*.  First, unlike *Waldron*, Baker does not base his claims for relief on his Sixth Amendment right to the effective assistance of counsel on appeal.  Further, *Waldron* is factually distinguishable from Baker's case.  In *Waldron*, the trial court advised the defendant of his right to appeal, the defendant stated that he wished to appeal his sentence and the court appointed appellate counsel.  *Id.* at 880.  Court-appointed counsel missed the filing date and the court of appeals dismissed the appeal as untimely.  *Id.*

In contrast to *Waldron*, Baker was not informed of his appellate rights.  In a more factually similar case, the Sixth Circuit has held that a state court's failure to advise a petitioner of his appellate rights at sentencing was not a state-created impediment that prevented him from filing his federal habeas petition.  *Miller v. Cason*, 49 Fed. Appx. 495, 497 (6th Cir. 2002) ("Although [failing to give notice of his appeal rights at sentencing and not timely appointing counsel to perfect a belated appeal] may have interfered with Miller's direct appeal in state court in the early 1990s, Miller has failed to explain how the action prevented him from filing his federal habeas corpus petition until 2001.").  The Sixth Circuit is joined by several other courts in finding that the state-created impediment must prevent the petitioner from filing a federal habeas action, not just a direct appeal in state court.  *See Smith v. Hudson*, No. 5:06cv2959, 2008

---

[3]*Waldron* was decided before the Supreme Court decided *Lawrence v. Florida*, 549 U.S. 327, 127 S.Ct. 1079, 166 L.Ed.2d 924 (2007) in which the Court held that the period of tolling during the pendency of an application for State post-conviction or other collateral review
does not include the ninety days during which a petitioner could seek a writ of certiorari in the U.S. Supreme Court.  This holding overruled the Sixth Circuit's contrary conclusion in *Abela v. Martin*, 348 F.3d 168 (6th Cir. 2003).

WL 2079386, *2 (N.D. Ohio May 15, 2008) ("Petitioner focuses on impediments that interfered

with his ability to file a direct appeal in state court.  None of these factors served to impede

Petitioner's ability to file his federal petition in a timely manner."); *Neff v. Brunsman*, No.

1:06cv135, 2007 WL 912122, **7-8 (S.D. Ohio March 23, 2007) (no state-created impediment

where appointed counsel informed petitioner of his right to appeal but did not tell him he only

had thirty days to do so because petitioner "has not alleged any facts even remotely suggesting

that his counsel or trial court improperly advised him that he had no federal remedies or engaged

in any conduct that would have prevented petitioner from filing a timely habeas petition");

*Welches v. Lakeside Corr. Facility*, No. 3:08cv152, 2008 WL 4623055, *2 (N.D. Ind. Oct. 16,

2008) (petitioner's allegation that he was not informed of his right to appeal his sentence not a

state action that prevented him from filing a federal habeas petition); *Pearce v. McNeil*, No.

4:08cv156, 2008 WL 4057760, *3 (N.D. Fla. Aug. 22, 2008)("It is inconceivable that lack of

advice regarding a state court direct appeal would ever *prevent* the filing of a § 2254 habeas

petition in *federal* court.  There is a difference between not knowing about the existence of a

claim, which frequently happens, and an actual impediment that prevents the claim from being

filed.") (emphasis in original); *Stimel v. Dretke*, No. V-05-108, 2006 WL 2770025, *5 (S.D. Tex.

Sept. 22, 2006) (same).  In light of the foregoing, Baker is not entitled to calculation of the

statute of limitations under §2244(d)(1)(B).


### *Factual Predicate*

Alternatively, Baker asserts that the one-year period should be calculated under 28

U.S.C. §2244(d)(1)(D) which provides that the one-year AEDPA statute of limitations does not

begin to run until "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."  Baker claims he did not learn of his right to appeal until September, 2005, when a fellow inmate told him of his appellate rights. (Baker Aff. ¶12).  Baker primarily relies upon the Sixth Circuit's decision in *DiCenzi v. Rose*, 419 F.3d 493 (6th Cir. 2005), which was amended and superseded by *Dicenzi v. Rose*, 452 F.3d 465 (6th Cir. 2006).

Respondent counters that Baker cannot show the diligence required under *Johnson v. United States*, 544 U.S. 295, 125 S.Ct. 157, 161 L.Ed.2d 542 (2005).  In *Johnson*, the petitioner challenged the constitutionality of a sentencing enhancement based upon a state court conviction that had since been vacated.  *Id.*  The United States Supreme Court held that, under 28 U.S.C. §2255, the federal analogue to §§2244,  the one-year filing limitation began to run when the petitioner received notice that the state court conviction had been vacated, provided that he had sought the vacatur with due diligence.  *Id.* at 298.  The *Johnson* Court reasoned that a state-court vacatur is a matter of fact for purposes of the limitation rule in section (f), paragraph (4) of §2255.  *Id.*  The Court observed that by bringing a proceeding challenging a prior conviction, the petitioner causes the factual event to occur.  *Id.* at 307.  The Court stated, however, that a petitioner may not enjoy an indefinitely delayed starting date for the §2255 statute of limitations simply because he chose to wait a significant period of time before seeking relief.  *Id.*  Therefore, the Court concluded that a petitioner may benefit from a delayed starting period under section (f), paragraph (4) of §2255 only when he has acted with due diligence in pursuing a remedy from a lower court.  *Id.* at 307-08.  *See McIntosh v. Hudson*, No. 1:07cv2583, 2008 WL 4758695, *6 (N.D. Ohio Oct. 28, 2008).

-12-

While *Johnson's* pronouncements on diligence generally and the AEDPA's emphasis on timeliness are instructive, the *Johnson* decision is procedurally not on four-squares with Baker's case.  Baker is not arguing that the statute of limitations should run from the date of a lower court entry affecting his sentence, but rather from the date he learned of his right to appeal.  The Sixth Circuit's decision in *DiCenzi*, which was decided after *Johnson* but does not cite *Johnson*, governs.  *See McIntosh*, *supra*, at **6-9 (explaining the interplay between *Johnson* and *DiCenzi* and holding that *DiCenzi* governed petitioner's claim that the trial court failed to advise him of his right to appeal and to appellate counsel).

In *DiCenzi*, the petitioner pleaded guilty to two felonies in May of 1999 and was sentenced to a prison term of five years. *DiCenzi*, 452 F.3d at 466.  At the sentencing hearing, the trial judge failed to inform Dicenzi of his right to appeal his sentence.  Dicenzi did not file any motions for post-conviction relief or appeal his conviction until he contacted the public defender's office in August of 2001 and learned of his right to appeal.  *Id.* at 467.  He immediately filed a motion for leave to file a delayed appeal, which was denied.  On April 3, 2003, he filed a habeas petition alleging, inter alia, a Sixth Amendment violation arising out his counsel's failure to inform Dicenzi of his appellate rights, and a due process violation arising out of the trial court's failure to advise him of his appellate rights.  After the petition was dismissed by the district court for failure to satisfy the statute of limitations or justify equitable tolling, the Sixth Circuit considered the timeliness issue on appeal. *Id.* at 467.

The Sixth Circuit first analyzed Dicenzi's argument that the statute of limitations did not begin to run until he spoke to the public defender in August 2001 and learned of his right to appeal. *Id.* at 469.  Dicenzi argued that he could not have known of his appellate rights prior to

-13-

that date.  The Court analyzed this argument under 28 U.S.C. §2244(d)(1)(D), which triggers the

one-year statute of limitations on "the date on which the factual predicate the claim or claims

presented could have been discovered through the exercise of due diligence."  *Id.* The Sixth

Circuit noted that the district court had not even considered due diligence under § 2244(d)(1)(D),

but had simply analyzed the scenario under § 2244(d)(1)(A) and the equitable tolling doctrine.

*Id.* at 470.  Accordingly, the Sixth Circuit remanded for findings regarding whether Dicenzi

exercised due diligence as required to invoke the § 2244(d)(1)(D) statute of limitations trigger.

With respect to § 2244(d)(1)(D), the Sixth Circuit stated: "The proper task in a case such

as this one is to determine when a duly diligent person in petitioner's circumstances would have

discovered [his right to an appeal]."  *DiCenzi*, 452 F.3d at 470 (quoting *Wims v. United States*,

225 F.3d 186, 190 n. 4 (2d Cir.2000) (brackets in original)).  The Court noted that the question

of due diligence is fact-specific and depends on various considerations, including the petitioner's

post-conviction conversations with his lawyer and the conditions of his confinement after

sentencing. *Id.* at 471.  The Court also clarified the that "the petitioner bears the burden of

proving that he exercised due diligence, in order for the statute of limitations to begin running

from the date he discovered the factual predicate of his claim pursuant to 28 U.S.C. §

2244(d)(1)(D)."  *Id.* (citing *Lott v. Coyle*, 261 F.3d 594, 605-06 (6th Cir.2001)).

The Court then briefly addressed the facts relevant to Dicenzi's diligence, noting that he

filed his habeas petition four years after his conviction became final, he "apparently took no

action" for a long period of time, and that he could have asked the public defender or a court

about his appellate rights at any time and did not do so.  *Id.* at 470, 471.  In light of the fact that

the district court did not conduct any analysis of Dicenzi's diligence, however, the Sixth Circuit

-14-

remanded for findings on the issue.  *Id.* at 472.

 *DiCenzi* is directly applicable here because it involved the same alleged constitutional violations Baker is asserting, i.e., a Due Process claim arising from the trial court and counsel's failure to advise the petitioner of appellate rights.  The Sixth Circuit clearly places the burden of establishing due diligence on the petitioner.  *See DiCenzi*, 452 F.3d at 471; *Townsend v. Lafler*, 99 Fed. Appx. 606, 608 (6th Cir. 2004), cert. denied, 543 U.S. 1062, 125 S.Ct. 884, 160 L.Ed.2d 792 (2005).  Accordingly, in order to satisfy the AEDPA statute of limitations under §2244(d)(1)(D), Baker must establish that, through the exercise of due diligence, he could not have discovered his right to challenge his 2002 sentence until, at most, one year prior to June 16, 2006, the date on which he filed this habeas petition (accounting, of course, for tolling periods due to collateral filings).

 A court in this district has recently addressed a claim of due diligence under *DiCenzi* and found that the petitioner had not exercised diligence.  *See Steward v. Moore*, 555 F.Supp.2d 858 (N.D. Ohio 2008).  In *Steward*, the petitioner was convicted of felonious assault in 1994 and sentenced to a prison term of 5 to 15 years.  *Id.* at 860.  The trial court did not inform Steward of his appellate rights and Steward did not appeal at that time.  Steward served only seven months of his sentence and then he was released and placed on probation.  *Id.*  While he was on probation, Steward was indicted for rape.  The trial court found that Steward's rape charges constituted a violation of his probation and ordered him to serve his original sentence.  Steward was convicted on the rape charge and sentenced to 10 years in prison.  Steward unsuccessfully appealed his rape conviction.  In 2005, Steward filed a petition for habeas corpus in which he asserted that his 1998 sentence was enhanced by virtue of his 1994 conviction.  *Id.*  Steward

-15-

sought an order allowing him to withdraw his 1994 plea or to appeal the conviction with counsel. *Id.* Respondent argued that his petition was time-barred. Steward countered that he did not learn of his right to appeal until February of 2001, when he was alerted to his right to appeal in the return of writ to his habeas petition challenging his 1998 conviction. *Id.*

The district court applied *DiCenzi* to calculate when Steward, acting with due diligence, could have discovered his appellate rights. In holding that Steward had not exercised due diligence, the court recognized, "[t]he burden of demonstrating due diligence is on Steward." *Id.* at 868. Like *Steward*, Baker's apparent explanation for his inactivity in pursuing his appellate rights is that he was unaware of such rights. "This however, is an equitable tolling argument and does not excuse [petitioner's] complete failure to act." *Id.* at 869. In keeping with *DiCenzi*, the court considered the circumstances of Steward's incarceration and his conversations with his lawyer. The court acknowledged that Steward's conversations with trial counsel were apparently useless. Steward, however, was released from custody after seven months and was free to inquire about his rights at that time. Also, the court found that Steward could have inquired about his appellate rights when he appeared in court and was represented by counsel for his rape charges. *Id.*

Baker, unlike Steward, has not been out of prison following his sentencing. But, Baker's mother retained counsel to represent him six months after he was incarcerated. (Baker Affidavit at ¶9). Although Baker states that his retained counsel never told him of his appellate rights and instead pursued a motion to withdraw his guilty plea, Baker does not assert that he affirmatively asked counsel about his appellate rights. *See Steward* at 869 ("Steward argues that his lawyer for the 1998 rape case should have told him of his ability to challenge the 1994 conviction, but

-16-

states that this 'simply did not happen.'  Due diligence requires the petitioner to pursue his

rights, however, and Steward does not contend that he ever asked his lawyer about challenging

his 1994 conviction."). *See also Ramos v. Wilson*, No. 1:06cv901, 2008 WL 2556725, *6 (N.D.

Ohio June 23, 2008) ("where the prisoner had access to retained counsel, it would appear that

any period of time greater than 90 days would be inexcusable and would not constitute the

reasonable exercise of due diligence discovery of his right to an appeal").

       Following his conviction and sentencing, Baker sought to withdraw his guilty plea

through a counseled motion and appeal of the denials of that motion.  Other than these actions, it

appears that Baker was entirely passive, and thus not duly diligent, in learning of his right to

appeal.  Baker does not state why he did not inquire about his appellate rights or what prevented

him from learning of his rights in the time period from December, 2002 through September,

2005.  Baker claims in his affidavit that he learned of his right to appeal when he "was informed

of that right by a fellow inmate on or about September, 2005."  (Baker Aff. ¶12).  Curiously, in

his December 14, 2004 motion for leave to file delayed appeal, Baker states that he "became

aware of his right to direct appeal for the first time when he received the trial court's Journal

Entry denying his Crim.R. 32.1 motion, filed July 21, 2004."  (Respondent's Ex. 22 at p. 6).  In

the December 14, 2004 motion, Baker does not state when he received the July 21, 2004 journal

entry.  Yet, in his memorandum in support of his petition for habeas corpus, Baker now contends

that "[a]lthough the denial of his withdraw motion was Journalized on August 30, 2004,

Petitioner did not receive an actual copy of that opinion until over one year later, on or about

September of 2005."  (Memorandum in support at p. 8).  The undersigned submits that Baker has

not carried his burden of demonstrating due diligence where he was represented by retained

-17-

counsel yet did not obtain the journal entry that he now claims alerted him to his right to appeal until over a year after it was entered.  A person who was diligently pursuing his legal rights would have sought the journal entry long before September, 2005, particularly when represented by retained counsel.  Further, Baker does not claim that he was ever denied access to a law library and law clerks, yet he did not learn of his right to appeal until a fellow inmate/law clerk told him in September, 2005.  Baker has not advanced any reason that he could not have inquired of the law clerks about his appellate rights prior to September, 2005.   Thus Baker's lack of diligence is apparent.  *See McIntosh v. Hudson*, No. 1:07cv2583, 2008 WL 4758695, *9 (N.D. Ohio Oct. 28, 2008) (petitioner was not diligent under 2244(d)(1)(D) where he pursued his appellate right only afer a law clerk approached him and informed him of the trial court's error in failing to advise him of his right to appeal).

### *Equitable Tolling*

Alternatively, Baker claims that he is entitled to equitable tolling of the AEDPA's one-year statute of limitations.  Failure to file a habeas petition within the period prescribed by §2244(d)(1)(A)-(D) is not jurisdictional, and is subject to equitable tolling.  *See Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004) cert. denied, 543 U.S. 865, 125 S.Ct. 200, 160 L.Ed.2d 109 (2004).  To benefit from equitable tolling, the petitioner must show that he has been pursuing his rights diligently, and that some extraordinary circumstance stood in his way.  *Lawrence v. Florida*, 549 U.S.327, 127 S.Ct. 1079, 1085, 166 L.Ed.2d 924 (2007), quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418,125 S.Ct. 1807, 161 L.Ed.2d 669 (2005).  "Typically, equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably

-18-

arose from circumstances beyond that litigant's control."  *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560-61 (6th Cir. 2000).  The Sixth Circuit has found equitable tolling to be appropriate in two circumstances: (1) when the petitioner makes a credible showing of actual innocence; and (2) under the five-factor test established in *Dunlap v. United States*, 250 F.3d 1001 (6th Cir.2001), cert. denied, 534 U.S. 1057, 122 S.Ct. 649, 151 L.Ed.2d 566 (2001). *See Souter v. Jones*, 395 F.3d 577, 602 (6th Cir. 2005).[4]  The five factors in the *Dunlap* test are as follows:

(1) the petitioner's lack of notice of the filing requirement;
(2) the petitioner's lack of constructive knowledge of the filing requirement;
(3) diligence in pursuing one's rights;
(4) absence of prejudice to the respondent; and
(5) the petitioner's reasonableness in remaining ignorant of the legal consequences for filing his claim.

*Dunlap*, 250 F.3d at 1008 (citing *Andrews v. Orr*, 851 F.2d 146, 152 (6th Cir. 1988)).  "This list of factors is not necessarily comprehensive, and not all factors are relevant in all cases." *Vroman v. Brigano*, 346 F.3d 598, 605 (6th Cir. 2003).  The Sixth Circuit has also emphasized that "absence of prejudice is a factor to be considered only after a factor that might justify tolling is identified." *Id.*

Baker claims he is entitled to equitable tolling of the statue of limitations because neither the trial court nor counsel told him of his right to appeal, he had no prior experience with criminal courts or the appellate process, and because at the time he entered his guilty plea, he had suffered brain damage from the accident that led to his arrest.  These stated reasons for his delay are insufficient to justify equitable tolling.  The Sixth Circuit has held that the state court's

---

[4]Baker has not advanced any actual innocence argument and there are no facts in the record to support such an argument.

failure to advise the petitioner of his appellate rights does not alone justify equitable tolling. *Miller v. Cason*, 49 Fed. Appx. 495, 497 (6th Cir. 2002). As noted in *Miller*, the state court's failure to notify the petitioner of his appellate rights "may have interfered with [the petitioner's] direct appeal in state court ... but [he] has failed to explain how the actions prevented him from filing his federal habeas petition." *Id. See also*, *Santiago v. Hurley*, 2:05CV560, 2006 WL 3196295, at *6 (S.D.Ohio Nov. 2, 2006).  In addition, assuming that Baker's attorney failed to notify him of his appellate rights does not justify equitable tolling.  Insufficient legal advice is not enough to support equitable tolling in the Sixth Circuit. *Steward v. Moore*, 555 F.Supp.2d 858, 872 (N.D. Ohio 2008), *citing Jurado v. Burt*, 337 F.3d 638, 644-45 (6th Cir. 2003); *see also Miller v. Jeffreys*, 3:05CV1989, 2006 WL 3469638, at *6-7 (N.D. Ohio Nov. 30 2006) (summarizing cases denying equitable tolling despite attorney errors).

It appears that Baker is attempting to argue that he is entitled to equitable tolling because he was suffering from brain damage at the time he entered his guilty plea.  Baker has not submitted evidence in support of that contention and, in reviewing the denial of his motion to withdraw his guilty plea, the Ninth District Court of Appeals addressed the same argument and found that Baker's guilty plea was knowing, intelligent and voluntary.  (Respondent's Ex. 15 at p.8).

Finally, lack of knowledge of applicable law, including the AEDPA, is not sufficient to justify equitable tolling.  *See Allen*, 366 F.3d at 403 (citing *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir.1991), cert. denied, 543 U.S. 865, 125 S.Ct. 200, 160 L.Ed.2d 109 (2004)). Likewise, the fact that the petitioner is acting pro se and is ignorant of applicable procedures is not "an excuse for prolonged inattention when a statute's clear policy calls for promptness...." *Johnson*,

544 U.S. at 311, 125 S.Ct. 1571.  The record shows that despite representation by retained

counsel, Baker first learned of his right to appeal in 2005, almost three years after he was

sentenced. This does not demonstrate diligence on Baker's part, or an extraordinary

circumstance to excuse untimeliness under §2244(d)(1)(A).


***Evidentiary Hearing***

Baker requests an evidentiary hearing on the issue of whether he exercised due diligence

in discovering his right to appeal his 2002 sentence.  An evidentiary hearing is appropriate if the

petitioner satisfies the requirements of 28 U.S.C. § 2254(e)(2). Section 2254(e)(2) provides:

> (2) If the applicant has failed to develop the factual basis of a claim in State court
> proceedings, the court shall not hold an evidentiary hearing on the claim unless
> the applicant shows that-
>
> (A) the claim relies on-
>
>> (I) a new rule of constitutional law, made retroactive to cases on collateral
>> review by the Supreme Court, that was previously unavailable; or
>> (ii) a factual predicate that could not have been previously discovered
>> through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and
> convincing evidence that but for constitutional error, no reasonable factfinder
> would have found the applicant guilty of the underlying offense.

The undersigned recommends that the factual record in this case is sufficient to conclude

that Baker has not exercised due diligence in pursuing habeas relief and that an evidentiary

hearing is not required.


***Conclusion and Recommendation***

Federal review of this petition is foreclosed by untimely presentation pursuant to 28

U.S.C. §2244(d)(1)(A). There has been no demonstrated need for an evidentiary hearing. It is recommended that this application for habeas corpus be denied.


      s/James S. Gallas
      United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of mailing of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).


Dated: January 15, 2009